GERALDINE WILLITS NEWBOLD AND MARJORIE WILLITS MARGERUM, EXECUTRICES UNDER THE LAST WILL AND TESTAMENT OF JESSIE WILLITS SALMON, PLAINTIFFS, v. LEWIS G. SALMON, DEFENDANT.

Superior Court of New Jersey
Chancery Division

Decided June 12, 1952.

448

*Mr. James N. Butler* for the plaintiffs (*Messrs. Moore, Butler & McGee*, attorneys).

*Mr. Edward J. Inglesby* for the defendant.

HANEMAN, J. S. C.   Lewis G. Salmon, the defendant herein, and Jessie Willits Salmon, hereinafter referred to as the decedent, were married on or about the 29th day of October, 1932.   One day prior thereto the defendant and the decedent entered into an ante-nuptial agreement in writing which provided, in effect, that neither of the parties should have, or claim, any right or interest in the property of the other, whether acquired before or after said marriage.

The decedent died, leaving a last will and testament dated October 25, 1948, wherein and whereby she nominated the plaintiffs, Geraldine Willits Newbold and Marjorie Willits Margerum, her neices and the only children of a deceased brother, as executrices thereof.   On or about April 21, 1951, said last will and testament was admitted to probate by the Surrogate of Atlantic County, and letters testamentary were issued to plaintiffs, who thereupon entered upon their duties and are now acting thereunder.

Said will provided for a bequest of $5,000 to be given to the defendant, notwithstanding said ante-nuptial agreement. The residuary estate, which included everything except the above bequest, was given to decedent's two neices, who are the plaintiffs herein.

After the death of Jessie Willits Salmon, plaintiffs discovered that there was a safe deposit box in the Ventnor City National Bank in the joint names of decedent and defendant

which had originally been in the name of the decedent alone. Upon opening said safe deposit box, plaintiffs discovered certain securities which were in the names of "Lewis G. Salmon and Mrs. Jessie W. Salmon as joint tenants with right of survivorship and not as tenants in common." That said securities, which are shares of stock, were purchased with moneys belonging entirely to the said decedent is admitted by counsel for all parties.

It is the contention of the plaintiffs that said shares of stock are the sole property of themselves as executrices of the estate of the decedent and that their demands upon the defendant to endorse the same, or to renounce any right or interest therein, have been denied. Plaintiffs also claim that the dividends and income from said securities have been paid to the defendant since the decedent's death; therefore, an account should be ordered thereof and the said stock, including the dividends and income therefrom, declared to be the property of the plaintiffs.

Plaintiffs seek the foregoing relief upon the grounds that Jessie W. Salmon (1) did not intend to create a joint tenancy of the said stock; (2) that the questioned acts were accomplished through the exercise of undue influence by the defendant upon the decedent, and (3) that in any event, said gifts are void or voidable, as the decedent made them at a time when she stood in a confidential relationship with the defendant, that she did not have the benefit of independent advice, and that there was a resultant impoverishment therefrom.

Plaintiffs, in their endeavor to show a pattern of conduct by the decedent, to negate the donative intent necessary to constitute a valid *inter vivos* gift by the decedent to the defendant, have introduced the will of the decedent's father to show that he desired his property to pass on to his issue and to none other. Furthermore, testimony was introduced by the plaintiffs to show that both the decedent and her father had discussed their problems with their attorney, Charles S. Moore, Esquire, to insure that the property would

pass to the issue of decedent's father. Much evidence was also introduced to show the resoluteness and determination on the part of the decedent to comply with her father's desires. However, the only purpose for which this evidence could be received is to negate the intent necessary to constitute an *inter vivos* gift.

As above noted, said securities were in the names of "Lewis G. Salmon and Mrs. Jessie W. Salmon as joint tenants with right of survivorship and not as tenants in common." This language manifests a clear intent to make a gift *in praesenti*. *Farris v. Farris Engineering Corp.*, 7 *N. J.* 487 (1951). Furthermore, the testimony reveals that the legal consequences of a joint tenancy were explained to her by the broker who sold her the said securities and that she subsequently stated that the stock had been bought in joint names. Therefore, it is conclusive that a valid gift *inter vivos* was created, notwithstanding the introduction into evidence of the ante-nuptial agreement, the will of the decedent's devisor, and the testimony to the effect that said decedent desired her property to go to the issue of her father. It is the intent at the time of the gift which controls.

I find as a fact that Jessie W. Salmon had a donative intent and completed the gift.

I find as well that the said Jessie W. Salmon was of sound mind at the time of the making of the alleged gifts and that she was not under the domination of her husband, the defendant. The gifts did not arise from the exercise of undue influence by the defendant. In fact, the evidence reveals that the husband, and not the wife, was the servient spouse.

In considering plaintiffs' third contention, the following principles must be borne in mind:

A donor who is mentally alert and capable may make any contract or gift he pleases, so long as it is free from fraud or undue influence. *Chandler v. Hardgrove*, 124 *N. J. Eq.* 516 (*Ch.* 1938). The burden of proof of a dominant confidential relationship is upon the plaintiffs.

In *Farley v. First Camden, &c., Trust Co.,* 107 *N. J. Eq.* 272 *(Ch.* 1930), the court said as follows:

"The averments of the bill are clearly inadequate to afford the relief sought. Improvidence in the gift and want of independent advice touching its execution are not alone sufficient to set aside a gift or donative trust of this nature. Except as against creditors a man of adequate mentality is privileged to give away all of his property, if he wishes to do so; and such a man needs no independent advice to sustain that apparently improvident act if the gift be made voluntarily and with full understanding of the transaction and its force and effect. It is the relationship of trust and confidence between the parties which may inspire a dominating influence over the donor which renders the apparent improvidence of the act and the want of independent advice material, in the absence of other equitable grounds for relief. *James v. Aller*, 68 *N. J. Eq.* 666."

In *Stroming v. Stroming,* 12 *N. J. Super.* 217 *(App. Div.* 1951), the court said:

"A confidential relation is not confined to any specific association of the parties; 'Its essentials are a reposed confidence and the dominant and controlling position of the beneficiary of the transaction.' *Foster v. Medela, supra.* 'It is clear that the dominance must be of the mind, and the dependence must be upon the mind rather than upon the hands and feet of the donee.' *Chandler v. Hardgrove*, 124 *N. J. Eq.* 516 *(Ch.* 1938). It exists when the circumstances make it certain that the parties do not deal on equal terms, but on the one side there is an overmastering influence, or, on the other, weakness, dependence or trust, justifiably reposed. It does not exist where the parties deal on terms of equality, although, as here, they are at the same time mother and son and business associates. See *Croker v. Clegg*, 123 *N. J. Eq.* 332 *(E. & A.* 1938)."

■ A requirement that the donor receive independent advice arises only where the gift is improvident. *Morrison v. Morrison,* 94 *N. J. Eq.* 646 *(Ch.* 1923), affirmed 94 *N. J. Eq.* 801 *(E. & A.* 1923); *Hutchinson v. Conkling,* 111 *N. J. Eq.* 471 *(E. & A.* 1932); *In re Curley,* 131 *N. J. Eq.* 460 *(E. & A.* 1942).

■ I find as a fact that at the time of making the gifts the decedent did not become impoverished, and that the gifts were not improvident, since it is disclosed that at the time of

her death she left an estate valued, for inheritance tax purposes, of between $83,000 and $88,000. This sum included the disputed securities, the subject of the questioned gifts, which were of the value of $18,000.

In view of the foregoing findings that the defendant did not inspire or exercise a dominant influence over the decedent, and that the gifts were not improvident, the plaintiffs have failed to sustain the burden cast upon them in connection with their third basis for setting aside the gifts. The failure of the decedent to obtain independent advice, in the light of said findings, does not invalidate the gift.

Judgment dismissing the complaint will be entered accordingly.